Good morning, Your Honors. May it please the Court. The Veterans Court concluded that because the VA committed a due process error, the claimant was entitled to receive benefits he was never awarded and to which he is not substantively entitled. We respectfully request that the Court reverse that decision. First, the Veterans Court committed legal error by failing to take due account of the rule of prejudicial error, as is required by statute and by the Supreme Court's decision in Sanders. By finding that a technicality trumped the merits of the case, the Veterans Court ignored the Supreme Court's holding in Sanders, which rejected presumptively prejudicial errors in the VA context and held that the party claiming an error must demonstrate that the error is harmful, as is normally the case in the civil cases. But the Court actually did find that the error was harmful, did it not? We, um, no, Your Honor. To the extent that the Court found that it was a harmful error, it was based upon a finding that the extraordinary award procedure review process was per se prejudicial, and that's precluded from... But the conclusion was it was prejudicial because the benefits would have issued, but for that improper procedure, correct? Well, that is based upon another legal error, which we would like to address as well. But no, the Court did not examine the facts and the circumstances of Mr. McClellan's case to determine whether the errors that this Court found in Purple Heart, which were due process errors, had a harmful effect upon Mr. McClellan's claim for benefits. And there are certainly facts and circumstances which would suggest that it was not a harmful error. Well, the Court specifically said that it was carefully assessing the question of prejudice, did it not? No, in fact, what the Court said on page 12 of the Joint Appendix is that the technicality trumped the merits of the case, notwithstanding the fact that there is no merit to Mr. McClellan's claim for benefits. The Court nonetheless found itself bound to award him benefits, and that certainly is not what is... But once the Veterans Court made a determination that there was prejudice, isn't that an application of lot of facts that we can't review? This Court can certainly review whether the Veterans Court applied the rule of prejudicial error, or contrary to Sanders, held that an error was per se prejudicial, which is what we think the Veterans Court here was doing, was not...was refusing to consider the facts and the circumstances of the cases Sanders requires, but instead just simply finding that there was an error and that automatically entitled Mr. McClellan something without a careful consideration of... What more prejudice could there be than you get benefits or you don't get benefits? If he would have gotten a benefit, forget about whether you think he should have gotten a benefit, he would have gotten a benefit, correct? We disagree with that contention, Your Honor. What we have here in June 2007 is a draft decision that had not been authorized, notice had not been issued to the veterans, and it simply was not a final decision granting Mr. McClellan benefits. But really the error here is not whether or not Mr. McClellan is entitled to benefits or not, it's whether he was denied certain due process errors that this Court in Purple Heart noted were interrupted by the extraordinary award review procedures, in particular the right to a hearing in front of the original decision maker and the right to interact between the decision maker and the claimant. Those were the errors that this Court found troubling in Purple Heart as well as the failure to issue the rule pursuant to APA notice and comments. But in terms of reviewing what the error is and whether it was harmful, the Court has to look at why Purple Heart, the rule in Purple Heart was reversed. But no, we certainly disagree, and it's based on statute and regulation that the draft decision in June 2007 was a final decision. Certainly if there was a final decision that had been issued to Mr. McClellan, well first of all it would have been, we wouldn't be here and we wouldn't be arguing that there was an error. But based upon 38 CFR 3.104A and this Court's decision in A&G v. Peek, we believe that there was not a final decision. That legal error affected not only the Court's prejudicial error analysis, but also the remedy which it imposed. But the Court concluded that a final decision would have issued as a matter of course, correct? I'm not sure that the Court did that. It seems to be a little confused about what the Court actually did. In some parts of the opinion it seems to suggest that there was a final decision already and that would have been a factual finding that the Court was not authorized to make. There certainly does seem to be some statement that the decision might have been promulgated, but the fact that it might have been promulgated does not mean that it was a final decision with legal ramifications for the VA and for the claimant. In Purple Heart we seem to say that EAP was improper because it was requiring a de novo review. Isn't that kind of what you're asking for here? Let's go back and do it over again. No, I think to the extent that the Veterans Court finds there is a harmful error, then one of the remedies it could consider would be sending it back down to the RO for an issuance of the statement of the case or an issuance of a favorable decision based upon what the RO does. If the decision is not final, what happens if you lose this case? What happens at that point? If the Veterans Court finds that there was harmful error, then the Veterans Court would have to issue an order to remedy that error. That might be remanding it to the RO to issue a final decision. It might be... That's what the Veterans Court did, right? Remanded for issuance of the award. No, Your Honor. The Veterans Court ordered the VA to enforce a draft decision that was never issued and never made final. If there is a harmful error found, then it could be sent back down to the RO for a final decision. That would still require certain steps to be taken. I think we have to go back and look at what is the last official act that was untainted by the Extraordinary Award Procedure. That's Mr. McClellan's request for Decision Review Officer review in January 2007. We would have to go back to that last official act and ask the RO then to properly adjudicate the claim without the interference of the Extraordinary Award Procedure. Do you doubt that this will be a final decision? I'm sorry, Your Honor? Do you doubt that this will become a final decision if it goes back? It could become a final decision, or if the Veterans Court wanted to send it to a different adjudicator to ensure that there was no taint from the fact that this has already been reviewed, that a different adjudicator might reach a different decision. But that is something that happens only after there's been a finding of harmful error, and that's only after the Veterans Court... So you are essentially asking for the very de novo review that Judge Rader commented on? Because otherwise, what's the point of sending it back unless you want to change the results? Well, I'm not saying it would not be de novo review because there's been no final decision. There's nothing to review yet other than the August 2007 final decision. But the way the regs work, once that decision was issued, it's inevitable that it becomes a final decision. Not necessarily, Your Honor. I think that what happens is that adjudicator drafts the back benefits that could have been awarded here. That decision needs to be approved by... It's a three-signature review. There's a three-signature review. There's an authorization process that follows from... That's a different team of that office. Anywhere along the way, that draft decision is still subject to revision up until the point when those three signatures are on the letter, there's a stamp, there's a date, and a notice is issued to the veteran by mail. It's at that point that the decision becomes final and binding, not only on the claimant, but also on the VA. Up until that point, all we're dealing with here is an internal deliberative process, which is on its way to becoming a final decision. But until we have a final decision, we're not going to be able to make any modifications for the parties. Finally, I'd like to address the Veterans Court's remedy. We've noted in our brief that the Veterans Court's jurisdiction here is limited by the board decision which it reviews. It can affirm, reverse, or modify that board decision. By ordering the VA to enforce a draft decision that was not reviewed by the board, the Veterans Court exceeded its jurisdictional authority. We don't find, as Mr. McClellan contends, that the court's equitable power somehow entitled the Veterans Court to do what it did. To the contrary, the Veterans Court's jurisdiction is extremely limited by statute to reviewing the board decision and not simply awarding benefits without regard to what the Veterans Court did. I will sit and... Thank you, Ms. Hoagland. We'll reserve the rest of your time for rebuttal. Mr. Ranzen? May it please the court. I'd like to start, if we could, with the prejudice here, which forms. First, I think you see it substantively that he had what was a favorable decision that the EAP resulted in a loss of a $400,000 award. We always consider financial injury to be cognizable injury. That would, of course, be prejudice. Second, we also have procedural prejudice here. Your Honor hit on that earlier as well, that what you would have had here is Congress provided only a single mechanism for the central office to review a decision of the regional office. That's through instituting collateral proceedings and showing clear and unmistakable error. Here, the effect of the EAP was to ratchet that standard review all the way down to de novo review, which you saw in Appellant's argument. It imparts that really what they're asking for is a whole fresh look at this case that they could only obtain through their unlawful use of the EAP procedure. I'd also like to focus this Court's attention on why that decision would have been issued, that the pragmatic reality was that that decision would have gone out but for the EAP. The Veterans Court specifically made a finding as such at JA 11-12. Respectfully, this Court lacks jurisdiction to review a factual finding or application of a lot of fact. As a practical matter, that finding of finality was well-supported for three reasons. First of all, there's just very numerous indicia of finality here. You have a draft decision that says benefits were granted and it was signed by two decision review officers. They then went on and drafted a letter to Mr. Macklem explaining what benefits would be granted and that was then signed by their manager, further showing finality. Second, the very nature of the EAP was it contemplated that only final decisions of the regional office would be forwarded to it. There's no indication whatsoever that the central office had any inclination to review final decisions. In fact, the only thing that they provided that they would review were awards that grant service connection. Thus, the very nature of sending it to the central office indicates the regional office viewed its decision-making as culminating in a decision and the only step remaining was to send it to the central office. Third, there's absolutely no indication that the regional office had any inclination to take a second look at this. I don't think the appellant pointed out anything that would indicate that this award would not have issued. Under those circumstances, I think the Veterans Court was amply justified in finding that this award would have gone out but for the EAP process. What about the government essentially pointing out the dispute between the majority and the dissent here about what the ultimate remand order should have looked like? Well, Your Honor, I think that the Veterans Court, certainly its discussion of the CUE wasn't strictly necessary. I think they wanted to do that to further show what the prejudice was and what it does is it shows that that change standard review really matters. That Mr. Macklem, if he were in the benefit of that favorable award and the government had to show clear and unmistakable error, the burden would be completely flipped. But because of the EAP, it was flipped to him to show clear and unmistakable error and in their judgment, he could not show it such. But that change standard review is certainly why, certainly further and a further element of the prejudice. I think the dissent correctly points out that strictly speaking isn't fully necessary but that it further illustrates the prejudice that Mr. Macklem suffered from the Purple Heart violation here. So, you disagree with the government that the Veterans Court never made a determination about prejudice? We do, Your Honor. I think at JAA 11 to 12, it shows, it specifically says that that award would have gone out and that's certainly prejudice. And here, at JAA 10, they specifically cite Shinseki v. Standards, which is the governing standard for prejudicial error and then they applied it to the facts of this case. And the Veterans Court specifically showed it was aware of that rule. It found other errors harmless. For example, the Board of Veterans' Appeals mischaracterized Mr. Macklem's injury as a fracture rather than the person's disease that it was. But that court recognized that that characterization didn't cause prejudice and thus held that error harmless. Here, by contrast, it found that the prejudice from the EAP was both that procedural and substantive prejudice that I discussed earlier. And we think that holding is correct but that in any case, that involved the application of a lot of facts in the harmless error context and this court would lack jurisdiction to review that specific application. Now, if I can, I'd also want to walk this court very quickly why the remand that the government suggests would not be an adequate remedy. And I think that's the case for three reasons. First of all, that would be a remand to a regional office operating under a cloud. And that cloud is that the central office has unlawfully expressed its views and thus, you know, operates under further prejudice if it were to be remanded. It's not unlike a situation if a boss were to go to an employee and say, here's the issue. It's your decision, but here's the right answer and of the boss. And so a remand here would be to an officer that has been unfortunately prejudiced by that expression. And here, what Mr. Macklin was entitled to was the unbiased decision of the regional office. And we have that in the record. That's that June 2007 decision to grant benefits. Second, a remand would fail to recognize the pragmatic reality that the Veterans Court did that this is an award that would have issued but for the EIP. And that for all the reasons I've described was well supported on the record. And that there's every indication that award would have gone out. Third, and as a practical matter, this is an 88-year-old veteran whose right to benefits would unfortunately pass away with him. And so as a practical matter, the government may be able to take advantage and profit from its Purple Heart violation simply by running out the chain would involve a lot of time that Mr. Macklin potentially does not have. Thank you, Your Honor. Ms. Hogan? I'd like to just briefly address a few points. First, Mr. Macklin's counsel goes into great factual detail about why this decision would have been final or was final and points to some statements in the Veterans Court's opinion regarding that. But those, again, were factual findings made in the first instance by the Veterans Court to the extent that there were factual findings made. And the Veterans Court, just as this court, has precluded from that de novo fact finding. And that was an error that we raised in our brief. Second, in terms of remand, of course, the Veterans Court can fashion an appropriate remedy. And as I mentioned before, that might mean sending it to a different RO. It might mean a consideration of the board's decision, which was free of the EAP review process and finding that the board's decision might have rendered the EAP review harmless. There are many things that the Veterans Court might do once it finds that there's a harmful error that could resolve the error here, which was simply a due process error that potentially precluded Mr. McClellan from hearing and from introducing argument that he may have been precluded from. And finally, I just want to make a factual clarification that if the Veterans Court does find that Mr. McClellan is entitled to benefit, or I'm sorry, the RO, and he passes away, his widow or his estate would be entitled to those back benefits. So for these reasons, we would respectfully request that the court reverse the Veterans Court's decision finding that it failed to correctly apply the rule of prejudicial error, that it made an error of law regarding finality, and that it made incorrect and unlawful de novo factual findings. Are there a lot of these cases out there where the EAP is still being improperly applied despite Purple Heart? Well, no. Once Purple Heart issued, of course, the EAP procedure ceased to exist. Are there a lot of cases left where the illegal procedure is still at issue? We were only aware of two cases before the Veterans Court where this issue has arisen. But if they were in the process of adjudication when the Purple Heart decision came out, then it was sent back to the RO without action. So we think it's a small universe of cases. Okay. Thank you, Ms. Hogan. Thank you.